**UNITED STATES of America, Plaintiff,**

v.

**Vincent J. RIDLEY, and Ruben C. Aldape, Defendants.**

**Nos. 92–40059–01–SAC, 92–40059–02–SAC.**

United States District Court, D. Kansas.

Feb. 9, 1993.

---

Lee Thompson, U.S. Atty., Gregory G. Hough, Asst. U.S. Atty., Topeka, KS, for plaintiff.

Jonathan B. Phelps, Topeka, KS, for defendant Ridley.

Marilyn M. Trubey, Asst. Federal Public Defender, Topeka, KS, for defendant Aldape.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on several pretrial motions filed by defendants Vincent J. Ridley and Ruben C. Aldape. The defendants are charged with one count of selling a machine gun on February 3, 1992, in violation of 18 U.S.C. § 922(o)(1) and (2). The machine gun was sold to undercover KBI agent, Rick Sabel, in a transaction arranged by a confidential informant. The confidential informant accompanied Agent Sabel when the purchase was made. The status conference in this case is set for March 12, 1993, at 3:00 p.m., and the trial is scheduled to begin at 1:30 p.m. on April 12, 1993.

The court entertained argument on these motions on February 3, 1993. Fully apprised of the parties' arguments and authorities, the court rules as follows.

### Motion to Compel Discovery Regarding Informant

The defendant Ruben Aldape filed this motion (Dk. 21.) The defendant Vincent Ridley moves to join (Dk. 24) this motion, and the

government has no objection. The court grants the motion to join on the condition that the defendant Ridley will not be allowed to raise any new, additional, or different arguments other than those found in defendant Ridley's written motion and memorandum. In other words, any issues of prejudice, standing, fairness, need or other factors unique to the party seeking to join shall be made in the written motion to join or the court will consider them to have been waived.

The defendants say they know that Paul Reese is the confidential informant in this case. What they seek to discover is the following additional information on the confidential informant:

 1. Disclose the full name, and address of the informant in the above-entitled matter;

 2. Disclose prior records of the informant, including both felonies and misdemeanors;

 3. Disclose any promised immunities or agreements with the informant, and other evidence affecting the issues of bias or credibility of the informant, including psychiatric treatment or drug addictions;

 4. Make reasonable efforts to produce the informant as witness at trial;

 5. Provide counsel for the accused with any recorded memorandum of communication between the informant and government agents;

 6. Provide counsel with a transcript of the informant's testimony before the grand jury, if any; and,

 7. Disclose whether there were any other informants and, if so, provide the information requested above regarding such other informants.

 8. Make the informant available for a pretrial interview with the defendants' counsel.[1]

The defendants cite *Roviaro v. U.S.*, 353 U.S. 53, 60, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1956) for the proposition that the government's privilege in protecting a confidential informant disappears once the informant's identity is disclosed. In addition, the defendants argue the informant was present and participated in the transaction making the requested disclosures relevant and essential to the defendants' right to a fair trial. They seek this additional information on the informant in order to decide if he would be a necessary witness and would offer some basis for asserting an entrapment defense.

The government opposes the motions contending that automatic weapon trafficking is conducted in a closed criminal community and that the use of informants is essential to effective law enforcement in this area. With the uncovering of the informant's true identity, the informant will not only lose his usefulness to the law enforcement agency but also may lose his life. The government denies that the informant's participation in this charged offense was anything more than accompanying Agent Sabel when the transaction was consummated. Since the entire transaction was audiotaped, the government believes the defendants do not have a compelling need for the informant's testimony to corroborate their version or to discredit the government's version. The government adds that since the "defendants claim to know the identity of said informant" they may subpoena his appearance if they wish. Finally, the government proposes that if it calls the informant as a witness then it will produce criminal history and any other relevant *Brady* material.

To some extent, the court's analysis of the defendants' motions differs if the defendants know the confidential informant's identity. The defendants make the blanket assertion that they know who the informant is. The court does not believe that the Supreme Court in *Roviaro* intended to make the governmental privilege on protecting confidential informants contingent on the defendants' ability to tag the informant with a name. *See U.S. v. Tenorio–Angel*, 756 F.2d 1505, 1510 (11th Cir.1985) ("The *Roviaro* Court did not intend for the existence of the government's privilege to depend upon the fortuity of whether or not the confidential informant introduced himself or herself to the defendant.") The court understands that the defendants must have talked with and seen the confidential informant in the course of this

---

1. Counsel for defendant Aldape added this request at the hearing.

alleged transaction. Obviously, this is reason enough for the defendants to recognize the informant by sight and to place some name to that face.[2] The court first will assume that this does not constitute knowledge or disclosure of identity and will analyze the defendants' request under the traditional *Roviaro* standards. The court then will assume that the defendants know the informant's identity and will analyze the defendants' request under the modified *Roviaro* standards.

■ In *Roviaro*, the Supreme Court began from the premise that an informant's identity must be revealed when it would be relevant and helpful to the accused's defense or essential to a fair determination of a cause. 353 U.S. at 60–61, 77 S.Ct. at 627–628. It was recognized, however, that a "fixed rule" on disclosure could not be justified on disclosure, for such a decision involves "balancing the public interest in protecting the flow of information against the individual's right to prepare his defenses." *Roviaro*, 353 U.S. at 62, 77 S.Ct. at 628. The degree of participation by the informant and the probative value of the informant's probable testimony are the two primary factors involved in striking this balance. *U.S. v. Nixon*, 777 F.2d 958, 967 (5th Cir.1985). When the informant is an active participant and the only witness to significant portions of the alleged criminal activity besides the defendant or the government's agent, disclosure is necessary. *U.S. v. Blevins*, 960 F.2d 1252, 1258 (4th Cir.1992) (citing *Roviaro*, 353 U.S. at 63–64, 77 S.Ct. at 629–630); *U.S. v. Batista–Polanco*, 927 F.2d 14, 19 (1st Cir. 1991). "Otherwise, disclosure is mandated only when the defendant is able to point to concrete circumstances sufficient to overcome the public interest in encouraging the flow of confidential information and the safety of confidential informants." *Batista–Polanco*, 927 F.2d at 19.

■ The burden is on the defendant to come forward with evidence establishing that the *Roviaro* criteria favor disclosure. *U.S. v. Blevins*, 960 F.2d 1252, 1258–59 (4th Cir. 1992). More than suspicion or speculation is needed to meet the defendant's burden. *U.S. v. Williams*, 898 F.2d 1400, 1402 (9th Cir.1990). " 'The defendant must explain to the court as precisely as possible what testimony he thinks the informer could give and how this testimony would be relevant to a material issue of guilt or innocence.' " *Blevins*, 960 F.2d at 1259 (quoting 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 510[06] (1991)).

■ The defendants have failed to make the necessary showing. After he arranged for the meeting between the defendants and the undercover agent, the informant's role was reduced to accompanying the undercover agent who negotiated and consummated the purchase of the machine gun. For this reason, the informant was not an active participant in the criminal activity for which the defendants are indicted.

At the hearing, counsel for the defendant Aldape suggested for the first time that a defense of entrapment was being considered and that discovery about the relationship between informant and the government and an interview with the informant would provide necessary information in deciding whether such a defense was viable. The court perceives this as mere conjecture or supposition about the possible usefulness of the informant's testimony. When entrapment is claimed, the defendant "must adduce some evidence of entrapment before the government is called upon to disclose" the identity of the confidential informant. *U.S. v. Sharp*, 778 F.2d 1182, 1187 (6th Cir.1985), *cert. denied*, 475 U.S. 1030, 106 S.Ct. 1234, 89 L.Ed.2d 342 (1986). The defendant Aldape has not presented any evidence or circum-

---

**2.** The court, however, appreciates a distinction between knowing the true identity of someone, knowing someone by sight, and knowing someone by an alias. Confidential informants enjoy protection not only from being anonymous but also from being inaccessible. For purposes of analysis, the pertinent question is when should the government be forced to surrender its privi-

lege for lack of an assumed purpose and to carry the burden of proving a continuing reason against further disclosure. The court does not believe it must struggle with this determination for under either the traditional *Roviaro* approach or the modified *Roviaro* approach, the result is the same.

stance suggesting a lack of predisposition to commit the charged offense.

Another critical factor under *Roviaro*, however, is the informant's presence at the transaction. The significance of this is minimized by the fact that the entire transaction was audiotaped. Therefore, the informant's testimony on what was said and happened would be cumulative in most respects. As agreed by the government and ordered by the court, the defendants' counsel will have access to the original audiotape recording of the transaction on February 3, 1992, and a written transcript of that recording will be provided to the defendants' counsel within ten days of this hearing. If after listening to and reviewing these additional materials, the defendants believe that the scope and quality of that evidence is not cumulative with what the informant could testify to regarding the charged transaction and that these and other circumstances arguably should compel this court to reconsider its ruling on the disclosure, the defendants should file such a motion within ten days after their receipt and access to that evidence. As of this date, the defendants have failed to show that the confidential informant's testimony is relevant and essential to a fair trial.

■ Now the court will assume that the defendants have established their knowledge of the informant's true identity.[3] The Court in *Roviaro* did say that "once the identity of the informer has been disclosed to those who would have cause to resent the communications, the privilege is no longer applicable." 353 U.S. at 60, 77 S.Ct. at 627. Even so, the government may still have other interests, implicated by this privilege, which extend beyond withholding the identity of the informant. *U.S. v. Sharp*, 778 F.2d at 1186; *see U.S. v. Smith*, 780 F.2d 1102, 1108 (4th Cir. 1985). The Fifth Circuit has said:

We do not imply that the government must, upon request, automatically furnish the address of an informant whose identity is not a secret from the defendant. The need for the informant's safety, the avoidance of jeopardizing other operations, or the defendant's ability to locate the informant himself, for example, may justify nondisclosure of the informant's address. While the confidential informant privilege under *Roviaro* evaporates when the informant is known to the defendant, we do not rule out other valid reasons that the government might advance against turning over the informant's address. The government, however, must suggest these reasons to the court.

*U.S. v. Fischel*, 686 F.2d 1082, 1092 (5th Cir.1982); *see also U.S. v. Aguirre Aguirre*, 716 F.2d 293, 300 (5th Cir.1983). The Eleventh Circuit recognized that even when an informant's name is known to those who may have cause to resent him, he may still enjoy protection because they cannot locate him. *U.S. v. Tenorio–Angel*, 756 F.2d at 1510. The government could also have an interest in ongoing law enforcement activities which would be jeopardized if the precise relationship between an informant and the government were disclosed. *U.S. v. Sharp*, 778 F.2d at 1187.

Where the informant's identity is known to the defendant but the government has some valid reason for not disclosing the informant's whereabouts, the courts resort to same balancing approach used in *Roviaro*. *Smith*, 780 F.2d at 1108; *Tenorio–Angel*, 756 F.2d at 1511; *Aguirre Aguirre*, 716 F.2d at 300 ("Surely the public's interest in effective law enforcement is no greater in a situation in which the informant's identity is known and the confidential informant's privilege does not exist."); *see United States v. Reardon*, 787 F.2d 512, 517 (10th Cir.1986) (ap-

---

**3.** The courts have recognized that a defendant's power to subpoena a known informant under Rule 17 of the Federal Rules of Criminal Procedure may be ineffective because of the peculiar difficulty in locating the informant. *See U.S. v. Padilla*, 869 F.2d 372, 376–77 (8th Cir.), *cert. denied*, 492 U.S. 909, 109 S.Ct. 3223, 106 L.Ed.2d 572 (1989). "Government informers are often difficult to find since they are seldom 'pillars of stability in their communities,' and are

commonly understood to be 'narcotic addicts or petty criminals whose cooperation with law enforcement officers is not entirely voluntary.'" 869 F.2d at 377 n. 1 (quoting *U.S. v. Barnes*, 486 F.2d 776, 780 n. 6 (8th Cir.1973)). Counsel for the defendant Aldape argued at the hearing that the informant's whereabouts were not known. The court is uncertain if this means counsel has made any investigative efforts to locate the informant.

plied *Roviaro* standards in deciding whether error for denying production of all available information on known informant). In other words, the court first must determine if the government has offered with particularity a valid reason for nondisclosure and then must balance that interest against the defendant's need for the disclosure. It falls upon the defendant to still show that disclosure will significantly aid his or her defense. *U.S. v. Smith*, 780 F.2d at 1108; *Aguirre Aguirre*, 716 F.2d at 301.

The government's concern for the safety of the informant and its need for informants in the closed criminal community of automatic weapon trafficking are valid reasons for withholding the informant's location. The court does not believe the government has advanced these concerns in a sweeping or reckless fashion. The court, however, will expect the government to articulate its reasons with more particularity when and if an in camera proceeding becomes necessary in this case. Balanced against the defendants' needs as previously addressed, the public interest in using and protecting this informant weighs heavier in this court's judgment. The informant was not an active participant in the transaction and his testimony of what he observed would be cumulative of the recorded evidence available to the defendants. Again, if the scope or quality of the recorded and transcribed evidence is deficient or of inferior quality to the point that the court arguably should be compelled to reconsider its ruling, the court expects the defendants will file a timely motion. At this time, the court will not impose on the government the duty to disclose the requested information or to provide the informant.[4]

Of course, this ruling in no way precludes the defendants from subpoenaing the informant as a witness. For this reason, the Government's duty to provide *Brady* material relating to any potential defense witness remains. *See U.S. v. Presser*, 844 F.2d 1275,

1285 (6th Cir.1988). The defendants' request for recorded communications and prior testimony are premature under Fed.R.Crim.P. 16, Fed.R.Crim.P. 26.2, and 18 U.S.C. § 3500. Indeed, except for their rights and the government's obligations under these rules and *Brady*, the defendants have no "generalized affirmative right" under *Roviaro* to discover the informant's statements. *U.S. v. Saa*, 859 F.2d 1067, 1075 (2nd Cir. 1988). The defendants' motion is denied except for the government's duty to provide *Brady* material relating to the informant as a potential defense witness.

### Motion for Severance of Trial

The defendant Ridley files this motion. (Dk. 20). He contends that defendant Aldape made several statements to the undercover agent, some of which were recorded, that will be used by the prosecution. In those statements, defendant Aldape talked about being the middle man in sales of guns and drugs. Without the right to confront and cross-examine the defendant Aldape regarding these statements, the defendant Ridley believes that the teachings in *Bruton v. U.S.*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), would be violated and that he would be denied a fair trial.

The government believes the defendant's arguments do not establish prejudicial joinder under Rule 14 of the Federal Rules of Criminal Procedure. Any prejudice caused by these statements can be cured by redacting any references to Ridley in Aldape's statements. Moreover, the government considers the statements admissible under the co-conspirator exception.

■ Fed.R.Crim.P. 8 provides that "two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transactions constituting an offense or offenses." In the Tenth Circuit, defendants charged jointly under Rule 8 are not entitled

---

4. If the court were to find that the disclosure of the informant's whereabouts would be relevant and necessary to the defendants' case and would serve the interest of justice, the court could require the Government to provide the informant's location, to exercise reasonable diligence and effort to locate the informant and make him

available for an interview or produce him at trial. *See, e.g., U.S. v. Suarez*, 939 F.2d 929, 932 (11th Cir.1991); *U.S. v. Padilla*, 869 F.2d at 377. Informants, however, "cannot be compelled to a pretrial interview with defense counsel." *U.S. v. Nixon*, 777 F.2d 958, 967 n. 12 (5th Cir.1985).

to separate trials as a matter of right. *Bailey v. U.S.*, 410 F.2d 1209, 1213 (10th Cir.), *cert. denied*, 369 U.S. 933, 90 S.Ct. 276, 24 L.Ed.2d 232 (1969); *see also U.S. v. Bailey*, 952 F.2d 363, 364–65 (10th Cir.1991).[5]

 Under proper circumstances, the court may grant severance even if joinder under Rule 8 is appropriate. *U.S. v. Hollis*, 971 F.2d 1441, 1456 (10th Cir.1992), *petition for cert. filed*, 61 U.S.L.W. 3500 (U.S. Dec. 30 1992). Fed.R.Crim.P. 14 provides in pertinent part:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance or provide whatever other relief justice requires ...

"In determining the merits of a motion for severance, the court must weigh the prejudice to a particular defendant caused by the joinder against the important considerations of economy and expedition in judicial interests." *U.S. v. Mabry*, 809 F.2d 671, 681 (10th Cir.), *cert. denied*, 484 U.S. 874, 108 S.Ct. 33, 98 L.Ed.2d 164 (1987), *and overruled on other grounds by, Mathews v. U.S.*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). Severance is a matter of discretion, not of right, and the defendant bears a heavy burden of demonstrating prejudice to his case. *Hollis*, 971 F.2d at 1456. "The Supreme Court has emphasized that trial courts have 'a continuing duty at all stages of the trial to grant a severance if prejudice does appear.'" *U.S. v. Peveto*, 881 F.2d 844, 857 (10th Cir.), *cert. denied*, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989) (quoting *Schaffer v. U.S.*, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960)).

 The fact that evidence against one defendant is more incriminating than another is not, standing alone, a basis for severance. *U.S. v. Dill*, 693 F.2d 1012 (10th Cir.1982);

see also *U.S. v. Cox*, 934 F.2d 1114, 1120 (10th Cir.1991) (that the government's evidence was stronger on some counts than on others does not mandate severance under Rule 14). Nor does the fact that one or more of the co-defendants has a criminal record entitle the defendant to a separate trial. *U.S. v. Warner*, 971 F.2d 1189, 1196 (6th Cir.1992).[6] Severance is not required because a defendant might have a better chance of acquittal if the trials had been severed. *Peveto*, 881 F.2d at 857; *U.S. v. Petersen*, 611 F.2d 1313 (10th Cir.), *cert. denied*, 447 U.S. 905, 100 S.Ct. 2985, 64 L.Ed.2d 854 (1979). Similarly, a complaint that the "spillover effect" from the evidence that was overwhelming or more damaging against the co-defendant than the evidence against the moving party is insufficient to warrant severance. *U.S. v. Hack*, 782 F.2d 862, 870 (10th Cir.), *cert. denied*, 476 U.S. 1184, 106 S.Ct. 2921, 91 L.Ed.2d 549 (1986); *U.S. v. Cox*, 934 F.2d 1114, 1119 (10th Cir. 1991). Moreover, the court may instruct the jury that it should consider individually the charges against each defendant and the evidence presented, and not consider any evidence admitted solely against one defendant against another defendant. *See Warner*, 971 F.2d at 1196 (severance not required if some evidence is admissible against some defendants and not others); *see also U.S. v. Cardall*, 885 F.2d 656 (10th Cir.1989) (the assumption that juries can and will follow the instructions they are given is fundamental to our system).

Besides being a "preference in the federal system," joint trials " 'play a vital role in the criminal justice system.' " *Zafiro v. U.S.*, — U.S. ——, ——, 113 S.Ct. 933, 937, 122 L.Ed.2d 317 (1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 209, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176 (1987)). Joint trials promote economy and efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent trials." *Richardson*, 481 U.S. at 209, 107 S.Ct. at

---

5. The defendants in this case do not appear to argue that they are not properly joined under Rule 8.

6. Similarly, if 404(b) evidence is introduced against only one defendant, the court may use a

cautionary instruction to safeguard other defendants from any prejudicial effect of the 404(b) evidence. *U.S. v. Jenkins*, 904 F.2d 549, 555–556 (10th Cir.), *cert. denied*, 498 U.S. 962, 111 S.Ct. 395, 112 L.Ed.2d 404 (1990).

1708–1709. Such interests are obviously served in having a joint trial of defendants who are indicted together and are alleged to have participated mutually in the charged offense. *See U.S. v. Jenkins,* 904 F.2d 549, 557 (10th Cir.), *cert. denied,* 498 U.S. 962, 111 S.Ct. 395, 112 L.Ed.2d 404 (1990). Consequently, "[c]ourts generally adhere to the principle that 'those indicted together, especially co-conspirators, should be tried together.'" *Peveto,* 881 F.2d at 857 n. 16 (quoting 8 J. Moore, W. Taggert & J. Wicker, *Moore's Federal Practice* ¶ 14.05, p. 14–82 (2 ed. 1989); *see U.S. v. Jenkins,* 904 F.2d at 556–557 (persons jointly indicted should be tried together).

■ The Supreme Court recently summarized the relevant law on severance under Rule 14 and some of the circumstances when a district court should consider it appropriate and necessary:

> We believe that, when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. *See Kotteakos v. United States,* 328 U.S. 750, 774–775, 90 L.Ed. 1557, 66 S.Ct. 1239 [1252–1253] (1946). Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. *See Bruton v. United States,* 391 U.S. 123, 20 L.Ed.2d 476, 88 S.Ct. 1620 (1968). Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial. *See, e.g., Tifford v. Wainwright,* 588 F.2d 954 (5th Cir.1979) (per curiam). The risk of prejudice will vary with the facts in each case, and district courts may find prejudice in situations not discussed here. When risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but, as we indicated in *Richardson v. Marsh,* less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice. *See* 481 U.S. at 211 [107 S.Ct. at 1709].

*Zafiro,* —— U.S. at ——–——, 113 S.Ct. at 938. Rule 14 does not compel severance even when the risk of prejudice is shown, for the trial court still retains the discretion to create a remedy which will abate the risk of prejudice. *Id.*

■ The defendant Ridley has failed to carry his heavy burden of showing a serious risk of prejudice. "*Bruton,* ..., does not hold that defendants in joint trials involving *Bruton* problems are entitled to separate trials." *U.S. v. Hill,* 901 F.2d 880, 883 (10th Cir.1990). *Bruton* problems, however, are avoided with a severance, but this is not a step required by *Bruton. Id.* Defendant Ridley has not shown at this time that the government will introduce statements by Aldape which are "'clearly inculpatory'" of Ridley and are "'vitally important to the government's case.'" *Hill,* 901 F.2d at 884 (quoting *U.S. v. Espinosa,* 771 F.2d 1382, 1399 (10th Cir.), *cert. denied,* 474 U.S. 1023, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985)). Nor has the defendant Ridley demonstrated that the redaction of offending references and the use of limiting instructions would be ineffective. *See Richardson v. Marsh,* 481 U.S. at 211, 107 S.Ct. at 1709. In *U.S. v. Parrish,* 925 F.2d 1293, 1299 (10th Cir.1991), a situation closely resembling the instant case is found. The defendant Parrish argued err in denying him a separate trial, because the trial court had admitted a statement from one co-defendant that he had a source for cocaine and a statement from another co-defendant that his drug supplier was asleep upstairs. The Tenth Circuit found no error as any reference to Parrish was deleted and the trial court instructed the jury to consider

the statements only against the particular co-defendant and not Parrish. "Severance is required 'only where admission of the statement in its edited form distorts the meaning of the statement or excludes information substantially exculpatory of the declarant.'" *U.S. v. Comeaux,* 955 F.2d 586, 590 (8th Cir.) (quoting *U.S. v. Long,* 900 F.2d 1270, 1279 (8th Cir.1990)), *cert. denied,* — U.S. —, 113 S.Ct. 135, 121 L.Ed.2d 89 (1992). Finally, there appears to be an arguable basis for believing that some or all of Aldape's statements may be admissible against Ridley as a statement of a co-conspirator made in furtherance of a conspiracy under Fed.R.Evid. 801(d)(2)(E). *See U.S. v. Carrazana,* 921 F.2d 1557, 1567 (11th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 191, 116 L.Ed.2d 152 (1991). The defendant Ridley has not established the serious prejudice necessary for this court to conduct separate trials. The motion is denied.

### Motion for Prosecutor to Advise of Rule 404(b) Evidence

■ The defendant Ridley has filed a motion requesting the government to give notice if it intends to introduce evidence against him under Fed.R.Evid. 404(b). At the hearing, the defendant's counsel stated that the government's response complies with the requirements of that provision. The motion is denied as moot.

### Motion to Compel Disclosure of Promises of Immunity

The defendant Ridley seeks to have the government disclose any promise, agreement, understanding or arrangement between the government and any prosecution witness or informant in this case or his attorney for immunity, leniency or preferential treatment. At the hearing, the defendant's counsel also conceded that the government had complied with this request. The motion is denied as moot.

IT IS THEREFORE ORDERED that the defendant Ridley's motion to join (Dk. 24) the defendant Aldape's motion to compel discovery regarding informant is granted on the conditions stated above;

IT IS FURTHER ORDERED that the defendant Aldape's motion to compel discovery regarding informant (Dk. 21) is denied;

IT IS FURTHER ORDERED that the defendant Ridley's motion for severance of trial (Dk. 20) is denied;

IT IS FURTHER ORDERED that the defendant Ridley's motion to require prosecutor to advise of Rule 404(b) material (Dk. 22) is denied as moot;

IT IS FURTHER ORDERED that the defendant Ridley's motion to compel disclosure of existence and substance of promises of immunity, leniency or preferential treatment (Dk. 23) is denied as moot.