UNITED STATES of America, Plaintiff-Appellee,

v.

Thomas Joseph REARDON, a/k/a T.J. Reardon, Defendant-Appellant.

No. 85–1621.

United States Court of Appeals, Tenth Circuit.

March 26, 1986.

Kurt S. Shernuk, Asst. U.S. Atty. (Benjamin L. Burgess, Jr., U.S. Atty., and Amanda S. Meers, Asst. U.S. Atty., with him on brief), Kansas City, Kan., for plaintiff-appellee.

Zygmunt J. Jarczyk of Evans, Mullinix & Jarczyk, Kansas City, Kan., for defendant-appellant.

Before BARRETT, LOGAN and ANDERSON, Circuit Judges.

BARRETT, Circuit Judge.

Thomas Joseph Reardon appeals from a jury conviction of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1) and using a telephone to facilitate a felony in violation of 21 U.S.C. § 843(b).

Reardon was originally indicted on June 27, 1984, and charged with two felonies, conspiring to sell cocaine and using a telephone in furtherance of the conspiracy. On August 31, 1984, as a result of plea bargaining, a superseding information was filed against Reardon charging him with a misdemeanor, attempting to possess approximately one pound of cocaine. On the same day Reardon entered a plea of guilty to attempting to possess cocaine.

On October 4, 1984, the Government filed a notice of revocation of its plea agreement with Reardon. In its notice the Government alleged that Reardon, contrary to his plea agreement, had failed to provide the Government with a "full and truthful accounting" of his knowledge of the use and trafficking in cocaine. Reardon requested a hearing on the Government's motion. Following a hearing held on October 12, 1984, the court entered an order finding that Reardon had breached the plea agreement. The court approved the revocation of the plea agreement and granted Reardon five days to decide whether or not to withdraw his plea.

On November 1, 1984, Reardon filed a motion to withdraw his plea. On Novem-

ber 5, 1984, the court entered an order allowing Reardon to withdraw his guilty plea. Subsequent thereto the Government moved to dismiss the original indictment and superseding information filed against Reardon and requested that the dismissal be without prejudice. On November 7, 1984, the court entered an order dismissing the superseding information and original indictment without prejudice.

On January 16, 1985, Reardon was indicted in the same case. He was charged, exactly as before,[1] with conspiracy to distribute cocaine and using a telephone to facilitate a felony. Two days later, on January 18, 1985, the Government filed a motion for a continuance. Within its motion the Government alleged, *inter alia:* Reardon's previous indictment was dismissed after Reardon breached his plea agreement; the Grand Jury returned a new indictment on January 16, 1985; the Government had been advised that as of January 16, 1985, only four (4) days remained to bring Reardon to trial[2]; and that failure to grant a continuance would deny counsel for Reardon and the Government reasonable time necessary for the preparation of the case. A copy of the motion was mailed to Reardon's attorney of record.

On January 31, 1985, Reardon's attorney entered his appearance as counsel of record for the second time. On the same date, the court entered an order granting a continuance. Within its order the court found:

It appearing that no response has been filed to said motion by the defendant, and it further appearing that, pursuant to Title 18, United States Code, Section 3161(h)(8)(B)(i) and (iv), failure to grant such a continuance in this proceeding would be likely to make a continuation of such proceeding impossible, in view of the fact that trial would have had to have begun on January 21, 1985, and that failure to grant such a continuance would deny the counsel for defendant and the attorney for the government the

reasonable time necessary for effective preparation of this case for trial, taking into account the exercise of due diligence, in view of the additional discovery needed, there are sufficient grounds for continuance of this matter and designation of excludable time. Accordingly, the Court further finds that the ends of justice served by the continuance of the trial of this matter and the designation of excludable time outweigh the best interests of the public and the defendant in a speedy trial.

(R., Vol. I at 42.)

On February 8, 1985, Reardon filed a motion to set aside the order for a continuance. In his motion Reardon alleged: the case arises out of a new indictment filed on January 16, 1985, charging the same crimes for which he was previously indicted on June 26, 1984; the June 26, 1984, indictment was dismissed on November 7, 1984; his attorney received a copy of the Government's motion for a continuance on or about January 21, 1985, at a time when he was not officially representing Reardon; his attorney formally entered his appearance for the new indictment on January 31, 1985; at an omnibus hearing on February 7, 1985, the magistrate gave defense counsel until February 19, 1985, to file his motions; and that he should be allowed to be heard on the Government's motion for a continuance and the other motions that he anticipated filing.

On February 12, 1985, the Government responded to Reardon's motion that the order for continuance be set aside. In its response the Government alleged: defense counsel was served with a copy of its motion for a continuance and had an obligation to respond or to advise Reardon to obtain other counsel to respond; Reardon has failed to respond; and that the determination of whether or not to grant a continuance is a discretionary one which cannot be

---

**1.** The second indictment did contain two additional overt acts which Reardon had related to the Government while negotiating his plea agreement.

**2.** *See, infra,* pp. 12–15.

set aside absent a showing of an abuse of discretion.

On February 19, 1985, Reardon filed five pretrial motions which included motions to: produce the grand jury transcript; reveal information concerning a confidential informant; dismiss under the Speedy Trial Act; dismiss the conspiracy count; and order election because of duplicity and multiplicity.

On February 22, 1985, the court entered an order denying Reardon's motion to set aside the order of continuance filed on January 31, 1985. On March 6, 1985, the court reviewed Reardon's five pretrial motions. The court found his motion to produce the grand jury transcript moot, and denied the other four motions, including Reardon's motion to dismiss for violation of the Speedy Trial Act.

Reardon proceeded to trial on March 6, 1985. During the trial the Government presented evidence which established that Reggie Speece, a confidential informant who knew Reardon,[3] introduced Henry Webb, a Government agent, to Reardon and Dwight Hatchett.[4] As a result of the meeting, the parties reached an agreement whereby Webb would purchase cocaine from Reardon and Hatchett. During the course of attempting to effectuate a purchase, several telephone conversations were recorded. The tape recordings were admitted in evidence at Reardon's trial. No sale was ever effectuated.

While acknowledging that he and Hatchett had met with Speece and Webb, Reardon testified at trial that he believed that Speece was trying to implicate Hatchett, and that for this reason he had agreed to participate in the agreement and plan to distribute cocaine in order to help Speece and for his own protection from Hatchett.

On March 8, 1985, Reardon was convicted of conspiracy to distribute cocaine and the use of a telephone to facilitate a felony. Reardon subsequently filed a motion for judgment of acquittal or, alternatively, a new trial. In his motion Reardon alleged that: He was severely prejudiced by the Government's failure to produce, as he had requested, Reggie Speece, the confidential informant; the verdict was not supported by the evidence; and the court erred in failing to grant his motion to dismiss under the Speedy Trial Act when the evidence clearly established his inability to locate and produce Reggie Speece. Reardon's motion was denied.

On appeal Reardon contends: (1) the court erred in allowing the Government to revoke its plea agreement with him; (2) the court erred in denying his pretrial motion to require the Government to reveal all of its information about Reggie Speece, its confidential informant; (3) the court erred in failing to dismiss the second indictment under the Speedy Trial Act; and (4) the Government's actions in pre-accusatory delay and in filing a second indictment deprived him of due process and violated his constitutional right to a speedy trial.

## I.

Reardon contends that the court erred in allowing the Government to revoke the plea agreement that had been negotiated with him. As set forth *supra*, Reardon was originally indicted on June 27, 1984, and charged with two felonies, conspiracy to sell cocaine and using a telephone in furtherance of a conspiracy. Subsequent thereto, and as a result of plea bargaining, a superseding information was filed charging Reardon with a misdemeanor. Reardon then pled guilty to the misdemeanor. The plea agreement which preceded Reardon's plea of guilty to a misdemeanor, provided in part:

1. It is hereby agreed by and between the plaintiff, United States of America, ... Thomas Joseph Reardon, a/k/a T.J. Reardon, personally and by his attorney, ...

---

3. Speece was dating Reardon's niece at the time he introduced Reardon to Webb.

4. Hatchett was a co-defendant in the first indictment and an unindicted co-conspirator in the second indictment.

2. The defendant will provide full and complete cooperation with agents of the Federal Bureau of Investigation or any other federal or state law enforcement agents designated by the United States Attorney's Office for the District of Kansas. This cooperation includes, but is not limited to:

a. The defendant will provide *a full and truthful accounting and statement of all knowledge he has concerning the use of and trafficking in cocaine and other controlled substances by all persons, including but not limited to himself:*

(R., Vol. I at 133–34) (emphasis supplied).

After the plea agreement was executed, Reardon met with the FBI and discussed his prior cocaine dealings. During his interview, Reardon assured the agents that his cocaine activity was limited to his participation in acquiring two ounces of cocaine "plus a little bit of cocaine Mr. Hatchett had brought back." (R., Vol. II at 11.) Thereafter, upon being told that "now was the time" for him to tell everything that he knew, Reardon again assured the agents that he was not involved in any other transactions.

Subsequent thereto, the FBI interviewed Dwight Hatchett. During Hatchett's interview, he related that he and Reardon had participated in other cocaine transactions which Reardon had failed to disclose. Upon being confronted, Reardon acknowledged his involvement in the additional transactions disclosed by Hatchett.

The Government then filed a notice of revocation of its plea agreement with Reardon. The Government alleged that Reardon had breached the plea agreement because he had failed to provide a full and truthful accounting of his cocaine trafficking. After a hearing, the court entered an order finding that Reardon had breached the plea agreement. The court also approved revocation of the plea agreement. We hold that the district court did not err in allowing the Government to revoke the plea agreement.

Where a plea is predicated in any significant degree on a promise or agreement, such promise or agreement must be fulfilled to maintain the integrity of the plea. *See, e.g., Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). Plea bargains, like contracts, cannot normally be unilaterally broken with impunity or without consequence. In *United States v. Calabrese,* 645 F.2d 1379, 1390 (10th Cir.) cert. denied, 454 U.S. 831, 102 S.Ct. 127, 70 L.Ed.2d 108 (1981), we held:

Courts have frequently looked to contract law analogies in determining the rights of defendants aggrieved in the plea negotiation process. *See Cooper v. United States,* 594 F.2d 12, 15–16 (4th Cir.1979); Westen & Westin, *A Constitutional Law of Remedies for Broken Plea Bargains,* 66 Cal.L.Rev. 471, 530 (1978). It is clear that a defendant's failure to fulfill the terms of a pretrial agreement relieves the government of its reciprocal obligations under the agreement. *United States v. Simmons,* 537 F.2d 1260, 1261 (4th Cir.1976); *United States v. Resnick,* 483 F.2d 354, 358 (5th Cir.), *cert. denied,* 414 U.S. 1008, 94 S.Ct. 370, 38 L.Ed.2d 246 (1973); *United States v. Nathan,* 476 F.2d 456, 459 (2d Cir.), *cert. denied,* 414 U.S. 823, 94 S.Ct. 171, 38 L.Ed.2d 56 (1973).

Inasmuch as Reardon failed to provide the Government with a "full and truthful accounting" of his cocaine activities, the district court did not err in allowing the Government to revoke the plea agreement. *See United States v. Baldacchino,* 762 F.2d 170 (1st Cir.1985).

## II.

Reardon contends the district court erred in denying his pretrial motion to require the Government to release all of its available information on Reggie Speece. As set forth *supra,* Speece, who was dating Reardon's niece and who knew Reardon, was the informant who introduced Reardon to Henry Webb, a Government agent working undercover. Reardon argues that Speece would have been a critical witness who

could have testified in support of his defense, i.e., that he (Reardon) participated in the agreement to help Speece and for his personal protection from Hatchett. Reardon argues that had he personally known of Speece's whereabouts, he would have made every effort to bring him to court to substantiate his (Reardon's) theory of defense. In response, the Government argues that Speece's role in the events leading up to Reardon's arrest was very limited, i.e., Speece introduced Reardon to Agent Henry Webb and had no further part in any of the subsequent investigation.

■ A defendant may obtain the identity and whereabouts of an informer if his testimony might be relevant to the defendant's case and justice would be best served by disclosure. *United States v. Sherman*, 576 F.2d 292 (10th Cir.) *cert. denied*, 439 U.S. 913, 99 S.Ct. 284, 58 L.Ed.2d 259 (1978). Disclosure of an informant is not required, however, where the information sought from the informer would be merely cumulative, *United States v. Pelley*, 572 F.2d 264 (10th Cir.1978), or where the informant did not participate in the transaction in question. *Garcia v. United States*, 373 F.2d 806 (10th Cir.1967).

■ Applying these standards, we hold that the district court did not err in denying Reardon's pretrial motion to have the Government release all of its information on Speece. Unlike *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), cited to and relied upon by Reardon, this is not a case in which an informant, unknown to the defendant, actively participated in the transaction which generated the charge. As set forth *supra*, Reardon knew Speece and Speece's participation was limited to introducing Reardon to Agent Webb.

### III.

■ Reardon contends that the court erred in granting the Government's motion for a continuance and that the court erred

in failing to dismiss the indictment for violation of the Speedy Trial Act.

As set forth *supra*, after Reardon was reindicted on January 16, 1985, the Government moved for a continuance. Within its motion the Government alleged it had been advised by the clerk of court that only four days remained to bring Reardon to trial. In granting the Government's motion for a continuance the court found that failure to grant a continuance "would deny the counsel for defendant and the attorney for the government the reasonable time necessary for effective preparation" and that "the ends of justice [are] served by the continuance of the trial of this matter."

Although Reardon acknowledges, while citing *United States v. Guerrero*, 667 F.2d 862 (10th Cir.1982), that a district court has wide discretion and latitude in granting a continuance, he argues that the continuance violated his rights under the Act. We hold that the court did not err in failing to dismiss the indictment for violation of the Speedy Trial Act and in granting the Government's motion for a continuance under 18 U.S.C. § 3161(h)(8). We agree with the district court's finding that the ends of justice were best served by a continuance of the matter. The propriety of the continuance is perhaps best exemplified by the fact that Reardon's attorney entered his appearance as counsel of record on January 31, 1985, the same day the district court granted the continuance. Under these circumstances we decline to hold that the continuance was erroneous.

### IV.

■ Reardon contends the Government's actions in pre-accusatory delay and in filing a (second) indictment deprived him of due process of law [5] and violated his constitutional right to a speedy trial. Reardon argues that under *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) he was prejudiced by the delay between the time the alleged crime was committed and his trial. Reardon argues that the prejudicial effect of the delay was mag-

---

**5.** This argument is not developed with any specificity.

nified when he was denied the Government's information on Speece. Reardon's arguments in this regard are without merit.

Reardon has failed to establish any prejudice from the delay of which he complains. In any event, the Sixth Amendment's guarantee of an individual's right to a speedy trial does not apply to the time preceding an indictment. *United States v. Loud Hawk,* — U.S. —, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986); *United States v. Jenkins,* 701 F.2d 850 (10th Cir.1983). In *United States v. Loud Hawk, supra,* the court held that the time period following the trial court's dismissal of charges against the defendant, during which the defendant is neither under indictment nor subject to any restraints on his liberty, must be excluded from any calculations for alleged violations of the defendant's Sixth Amendment Speedy Trial Clause rights. In *Loud Hawk,* the Court held:

> As we stated in *MacDonald:* "with no charges outstanding, personal liberty is certainly not impaired to the same degree as it is after arrest while charges are pending. *After the charges against him have been dismissed, 'a citizen suffers no restraints on his liberty and is [no longer] the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer.'* " (*United States v. MacDonald,* 456 U.S. 1, 9, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982).)

> Respondents argue that the speedy trial guarantee should apply to this period because the Government's desire to prosecute them was a matter of public record. Public suspicion, however, is not sufficient to justify the delay in favor of a defendant's speedy trial claim. *We find that after the District Court dismissed the indictment against respondents and after respondents were freed without restraint, they were "in the same position as any other subject of a criminal investigation."* MacDonald, supra at 9, 102 S.Ct. at 1502. [*See, United States v. Marion,* 404 U.S. 307,

309, 92 S.Ct. 455, 457–58, 30 L.Ed.2d 468 (1971)]. *The Speedy Trial Clause does not purport to protect a defendant from all effects flowing from a delay before trial.* The clause does not, for example, limit the length of a preindictment criminal investigation even though "the [suspect's] knowledge of an ongoing criminal investigation will cause stress, discomfort, and perhaps a certain disruption in normal life."

— U.S. at —, 106 S.Ct. at 654 (emphasis supplied).

WE AFFIRM.